# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **PHEASANT COVE, LLC,** | ) | **Case No. 07-00058-TLM** |
| | ) | |
| **Debtor.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION** |
| _____ | ) | |
| | ) | |
| | ) | |
| **RICHARD E. CRAWFORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Adv. No. 07-06021-TLM** |
| | ) | |
| **AJAX ENTERPRISES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## I.    INTRODUCTION

The Chapter 7 trustee, Richard Crawforth ("Trustee") asks the Court to

determine that the lien of an oversecured creditor, Ajax Enterprises ("Defendant"

or "Ajax"), securing a claim for default interest and late charges in the amount of

approximately $300,000.00, is voidable under § 724(a) and such claim is

subordinated in distribution under § 726(a)(4).[1] Before the Court are Defendant's

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy
(continued...)

MEMORANDUM OF DECISION - 1

Motion for Summary Judgment, Adv. Doc. No. 9 ("Ajax's Motion"), and Trustee's

Cross Motion for Summary Judgment, Adv. Doc. No. 18 ("Trustee's Motion").[2]

## II.   BACKGROUND AND FACTS

Between July 2005 and August 2006, Pheasant Cove, LLC ("Debtor")

executed nine promissory notes ("Notes") payable to Idaho Independent Bank

("Bank") related to the construction of condominiums in Kootenai County, Idaho

(the "Property"). Each Note was secured against the Property by a deed of trust,

and was payable with interest at a variable rate. The ultimate due date for payment

of principal and accrued interest on each Note was, following negotiated

extensions, October 25, 2006. Each Note contained the following provisions:

> INTEREST AFTER DEFAULT. Upon default, including failure to
> pay upon final maturity, Lender, at its option, may, if permitted
> under applicable law, increase the variable interest rate on this Note
> to 21.000% per annum. The interest rate will not exceed the
> maximum rate permitted by applicable law.

> LATE CHARGE. If payment is 15 days or more late, Borrower will
> be charged 5.000% of the unpaid portion of the regularly scheduled
> payment or $10.00, whichever is greater.

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay
> someone else to help collect this Note if Borrower does not pay.

---

[1](...continued)
Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005).

[2]  Pleadings in the chapter 7, Case No. 07-00058-TLM, are identified by "Doc. No." and
pleadings in the instant adversary proceeding, Adv. No. 07-06021-TLM, are identified by "Adv.
Doc. No.".

MEMORANDUM OF DECISION - 2

Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

On October 25, 2006, Pheasant Cove failed to pay all principal and accrued interest on the Notes as agreed.  In accordance with the terms of the Notes, the Bank imposed a late charge equal to 5% of the unpaid portion of the payment and increased the variable interest rate on each Note to 21% per annum.

On January 16, 2007, Debtor filed a voluntary chapter 7 case, Case No. 07-00058-TLM.  Debtor's schedules included the Property, which Debtor valued at $5,394,080.00, and listed the still unpaid debt owed the Bank at $2,942,845.45.[3]

On April 5, 2007, the Bank filed a proof of claim in the amount of $3,172,047.82, representing the balance due as of April 4, 2007.[4]  The Bank subsequently sold, transferred and assigned the loans and its claim against Pheasant Cove to Ajax, and Ajax is now the holder of the secured claim.[5]

Trustee sold the Property at auction for a gross price of $3,800,000.00, closing the sale on June 8, 2007.  On June 11, 2007, Trustee paid Ajax the sum of

---

[3]  *See* Doc. No. 14 at schedules A, D.

[4]  *See* Case No. 07-00058-TLM, at Claim No. 1.

[5]  Doc. No. 38.

MEMORANDUM OF DECISION - 3

$2,998,191.66.  This amount represented all the undisputed principal under the Notes in the amount of $2,812,619.81; non-default interest in the amount of $147,887.40 through June 8, 2007; and out of pocket loan costs and attorney fees in the amount of $37,684.45.[6]

After paying these amounts to Ajax, and paying real property taxes and closing costs and fees, the net amount retained by Trustee was $319,174.71.  Ajax contends these funds secure its claim for default interest and late charges that Trustee did not pay.[7]  Ajax asserts that default interest accrued as of June 11, 2007, is $164,827.23 and late charges as of April 4, 2007, are $127,302.04, yielding a claim of at least $292,129.27.[8]

Trustee's original complaint, filed prior to the sale, attacked as "penalty fees" under § 726(a)(4) the "late fees" asserted by Ajax in the amount of $127,302.04 as of April 4, 2007 and any like fees accruing after that date under the Notes, and sought to avoid Ajax's lien to that extent.[9]  Trustee's amended

---

[6] Adv. Doc. No. 20 at Ex. 2.  By agreed order, the Trustee did not pay the default interest or late charges, and held the net sales proceeds pending resolution of the instant adversary proceeding.  *See* Doc. No. 56 at 2-3.

[7] As discussed *infra*, Ajax's counterclaim implies these amounts increase.  Ajax also claims the benefit of § 506(b) and argues that the funds held by Trustee further secure its attorneys' fees.  In addition, the funds held by Trustee also putatively secure creditor First National Stone, which asserted a lien on the property and filed a secured claim in the amount $4,156.40.  *See* Case No. 07-00058-TLM at Claim No. 8.

[8] Adv. Doc. No. 20 at Ex. 1; *see also* Adv. Doc. No. 8 at 2.

[9] Adv. Doc. No. 1 at 2.

MEMORANDUM OF DECISION - 4

complaint attacks as "penalty fees" Ajax's assertion of "default interest, late fees, and other inappropriate charges."[10]

Ajax's disputes the § 724(a) and § 726(a)(4) contentions in its answer and counterclaimed for entry of judgment in its favor for all default interest accrued and all late charges, and also for reasonable attorneys' fees and costs in collecting the Notes, including those incurred in this adversary proceeding, all pursuant to § 506(b).[11]

Ajax then moved for entry of summary judgment dismissing Trustee's §724(a) and § 726(a)(4) causes, and granting Ajax's counterclaim.[12]  One week prior to the hearing scheduled by Ajax on its Motion,[13] Trustee filed his cross-motion for summary judgment.[14]

All issues were taken under advisement at the close of the hearing.

---

[10]  Adv. Doc. No. 7 at 2.  Trustee has not identified any other "inappropriate charges" in pleading, briefing or argument, and has assailed only default interest and late fees.

[11]  Adv. Doc. No. 8.

[12]  Adv. Doc. No. 9.

[13]  Adv. Doc. No. 18.  Trustee had already obtained a continuance of the initial hearing set by Ajax, asserting an inability to timely respond.  *See* Fed. R. Civ. P. 56(f), incorporated by Fed. R. Bankr. P. 7056.

[14]  Ajax agreed the Court could hear Trustee's cross motion even though Trustee did not comply with notice and other requirements of LBR 7056.1.

MEMORANDUM OF DECISION - 5

## III.    DISCUSSION AND DISPOSITION

### A.    Summary judgment standards

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81, 03.4 I.B.C.R. at 215 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597, 00.4 I.B.C.R. 175, 178 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to

establish the existence of that element in order to survive a motion for summary

judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

      **B.**    **The Motions as related to § 724(a) and § 726(a)(4)**

At its heart, the dispute between Trustee and Ajax is whether the language

of § 726(a)(4) encompasses Ajax's claim to default interest and late charges.

Section 726(a) governs the order of distribution of property by a trustee in a

chapter 7 case. *See* § 726(a)(1) - (6). Section 726(a)(4) provides:

> (a)   Except as provided in section 510 of this title, property of the estate shall be distributed –
>
> . . .
>
>     (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

Section 726(a)(4). Section 724(a) then gives a trustee the authority to "avoid a

lien that secures a claim of a kind specified in section 726(a)(4) of this title."

Section 724(a). Reading these two provisions together, "liens securing claims

within [section 726(a)(4)] are the ones that may be avoided under section 724(a)."

6 Collier on Bankruptcy ¶ 724.02 at 724-5 (Alan N. Resnick and Henry J.

Sommer, eds., 15th ed. rev. 2005).

The threshold inquiry is whether Ajax's claim is a "penalty" within the

MEMORANDUM OF DECISION - 7

meaning of § 726(a)(4).[15]  If so, such claim is subordinated to the extent it is not

compensation for actual pecuniary loss.  The Court concludes Trustee's

construction of § 726(a)(4) is unpersuasive and Ajax's claims to default interest

and late charges do not fall within that section.  From this conclusion, Trustee's

related § 724(a) contention fails.  Finally, these determinations support relief in

favor of Ajax on its counterclaim, though a final judgment cannot be entered just

yet.

### 1.    Existing case law

Although the parties have identified no controlling authority on their

interpretations of § 726(a)(4),[16] courts construing § 726(a)(4) generally consider

whether the obligation giving rise to the claim was intended to compensate an

injury, or to punish the debtor for his wrongdoing.[17]

---

[15]  In other appropriate circumstances, not presented here, the inquiry could be whether the claim is a fine or a forfeiture, or a claim for multiple, exemplary or punitive damages.  The Court can note that Trustee raised an alternative argument in his briefing, and again at hearing, that the default interest and late charges are "damages" under § 726(a)(4).  However, unable to respond to questioning at hearing as to how he could meet the section's additional requirements that such damages be "multiple, exemplary, or punitive," Trustee abandoned this contention, focusing instead on the phrase "fine, penalty, or forfeiture."

[16]  The Court acknowledges Trustee's citation to *In re Martindale*, 125 B.R. 32 (Bankr. D. Idaho 1991), where this Court did state "[D]efault interest is a penalty."  *Id.* at 37.  However, at issue in *Martindale* was the amount of the creditor's claim under a proposed chapter 11 plan, and in no sense can the Court be viewed as addressing the treatment of the claim under § 726(a)(4).

[17]  *See, e.g., In re Sher-Del Foods, Inc.*, 186 B.R. 358, 364 (Bankr. W.D.N.Y. 1995) (determining that a backpay award to Chapter 7 debtor's employees for debtor's failure to bargain in good faith with employees over closure of debtor's business lacked a "punitive purpose" and
(continued...)

MEMORANDUM OF DECISION - 8

One bankruptcy court did find that a claim for default interest was a penalty under § 726(a)(4). *See In re White*, 88 B.R. 498 (Bankr. D. Mass. 1988).[18] In *White*, the debtor secured a loan with a mortgage on real property with a default interest rate of 48% per annum. *Id*. at 499. That court wrestled with the lack of uniformity in the treatment of default interest provisions, which some courts evaluate under liquidated damages law and others under state usury laws. *Id*. at 503-510. Noting that the default interest rate of 48% "shock[ed] [its] conscience," *White* concluded it was "nothing more than a device (akin to a sledgehammer) to coerce the Debtors into prompt payment," and therefore was a penalty under § 726(a)(4). *Id*. at 511.

This Court views the facts in *White*, when compared to those in the present case, as distinguishable.[19] Further, that court's analysis appears driven more by its perception of and reaction to an "unfair" or "unconscionable" default rate than by a consideration of the purpose and scope of § 726(a)(4). *White*'s holding has not

---

[17](...continued)
therefore was not subordinated under § 726(a)(4)); *In re Graf Bros. Inc*. 38 B.R. 237, 238 (Bankr. D. Me. 1984) (holding that an annual highway use tax was *not* imposed as a "punitive measure" and therefore was not a "penalty" under § 726(a)(4)). *See also* 6 Collier on Bankruptcy, ¶ 726.02[4] at 726-12 (discussing three court of appeals decisions considering whether restitution from oil overcharges was compensatory and therefore not a penalty under § 726(a)(4)).

[18] This is the only case the Court found directly opining on whether default interest falls within § 726(a)(4).

[19] Simply by way of example, the non-default interest rate in *White* was 16.5% and the default rate was 48% or almost 3 times higher. In the present case, the applicable interest rate immediately prior to the final maturity date of the loans was 9.5% and the default rate was 21%. S*ee* Adv. Doc. No. 9, Attach. 1 at 2-3 ("Gustavel Affidavit").

MEMORANDUM OF DECISION - 9

been embraced by other courts, and it is not binding on this Court.

In the absence of controlling precedent, the Court turns to familiar canons

of statutory construction.

### 2.    Construction of § 726(a)(4) and § 724(a)

The 2005 BAPCPA amendments have made increasingly clear the

principles and authorities governing the Court's construction of the Code's

language.[20]  As this Circuit's Bankruptcy Appellate Panel recently summarized:

> When confronted with questions of statutory construction, we
> begin our analysis with the language of the statute itself, *Hughes
> Aircraft Co. v. Jacobsen*, 525 U.S. 432, 438 (1999), mindful that
> Congress "'says in a statute what it means and means in a statute what
> it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank,
> N.A*, 530 U.S. 1, 6 (2000) (citation omitted). When a statute's language
> is plain, we enforce it according to its terms, unless such a reading
> would render it absurd. *Lamie v. United States Trustee*, 540 U.S. 526,
> 534 (2004) (quoting *Hartford*, 530 U.S. at 6).
>
> To determine whether the statutory language is plain or
> ambiguous, we refer to "the language itself, the specific context in
> which that language is used, and the broader context of the statute as
> a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). When
> a statute does not define a term, we construe that term according to its
> ordinary, contemporary, common meaning.  *San Jose Christian
> College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).
> We may resort to a dictionary to determine the plain meaning of a term
> undefined by a statute.  *Id.*  We only refer to the statute's legislative
> history if an ambiguity exists or an absurd construction results.  *Id.*
>
> We note, however, that statutory construction is a "holistic

---

[20]  *See, e.g.,* Hon. Thomas F. Waldron & Neil M. Berman, *Principled Principles of
Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 Am. Bankr. L.J.
195 (2007).

MEMORANDUM OF DECISION - 10

endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The overall statutory scheme often clarifies a seemingly ambiguous provision because "only one of the permissible meanings [of that provision] produces a substantive effect that is compatible with the rest of the law." *Id. See also Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation omitted).

*Ransom v. MBNA America Bank, N.A. (In re Ransom)*, No. NV-07-1254, 2007 WL 4625248, at *5 (9th Cir. BAP Dec. 27, 2007).[21] These several principles serve as guideposts for the Court's analysis.

The Bankruptcy Code does not define the three, mated terms "fine, penalty, or forfeiture." However, a natural reading of this phrase leads one to conclude that default interest and late charges are not inherently or inevitably within such categories. If Congress intended to subordinate default interest and late charges under § 726(a)(4), it certainly could have expressly included them in that paragraph.[22]

---

[21] *See also Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 261-62 (9th Cir. BAP 2007); *Wells Fargo Fin. Acceptance v. Rodriguez (In re Rodriguez)*, 375 B.R. 535, 541 (9th Cir. BAP 2007); *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40, 50 (9th Cir. BAP 2007). Also, this Court has, when presented with issues of construction, applied these several principles. *See, e.g., Ryan v. United States (In re Ryan)*, 07.3 I.B.C.R. 54, 55, 2007 WL 2215387, at *2 (Bankr. D. Idaho 2007); *In re Steinhaus*, 349 B.R. 694, 704-05, 06.3 I.B.C.R. 79, 83 (Bankr. D. Idaho 2006); *In re Astle*, 338 B.R. 855, 857, 06.1 I.B.C.R. 5 (Bankr. D. Idaho 2006)

[22] Section 724(a), which expressly refers to claims under § 726(a)(4), was derived from § 57j of the Bankruptcy Act. 6 Collier on Bankruptcy, ¶ 724.LH[1] at 724-21. Section 57j disallowed a "penalty or forfeiture" but excepted from this proscription were compensatory

(continued...)

MEMORANDUM OF DECISION - 11

The common definition of "penalty" and the inclusion of this term in the statutory phrasing further support Ajax's position in this matter.  First, a "penalty" is "punishment imposed on a wrongdoer . . . esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)."  Black's Law Dictionary 1168 (8th ed. 2004).  Second, under the canon *noscitur a sociis*, words grouped in a list should be given related meaning.[23]  The meaning of "penalty" under § 726(a)(4) should, therefore, be determined in light of its accompanying terms.  A "fine" is a "pecuniary criminal punishment or civil penalty payable to the public treasury,"

---

[22](...continued)
claims.  *See* 4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 3d* § 83:2 (2008) (discussing avoidance of liens securing penalties under § 724(a) as compared to § 57j).  In enacting § 726(a)(4), Congress added the term "fine," but no other terms, to this preexisting phrase.  *Id*.  "Penalty or forfeiture" expressed a like concept, which the added term "fine" simply reinforced.  None of these concepts apply in a natural or inherent sense to default interest or late charges.  Congress' later addition of the "or for multiple, exemplary, or punitive damages" phrase similarly evidences that (a) § 726(a)(4) claims are specifically identified rather than implied, and (b) they include only punitive and noncompensatory claims.

Further, the principle under § 57j of "protecting unsecured creditors from a debtor's wrongdoing" also informs the present analysis.  *See* H.R. Rep. No. 595-382 (1977); S. Rep. No. 989-96 (1978).  Although the approach to penalty claims changed from disallowance under the Act to subordination in distribution under the Code, both approaches apply only to *punitive* obligations intended to punish the debtor.

[23]  *See United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003) ("[T]he meaning of doubtful words may be determined by reference to associated words and phrases.").  *See also Jarecki v. G.D. Searle & Co*., 367 U.S. 303, 307 (1961) (This canon is "often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.").

MEMORANDUM OF DECISION - 12

and a "forfeiture" is a "divestiture of property." *Id*. at 664, 677.[24]  These terms are decidedly different from either the default interest or the late charges here.[25]

Each word in the phrase "fine, penalty, or forfeiture," when looked at from a dictionary-assisted reading, carries the concept of noncompensatory punishment.[26]  In fact, § 726(a)(4) itself emphasizes this fact by its express requirement that, if the claim at issue *is* a fine, penalty, or forfeiture, it will be subordinated only "*to the extent that* such fine, penalty, or forfeiture [is] not compensation for actual pecuniary loss[.]"

The overall statutory scheme and the use and meaning of "penalty" in other Code provisions also lead the Court to the conclusion that § 726(a)(4) applies to penal, noncompensatory obligations.[27]  For example, § 726(a)(4) mirrors the language of § 523(a)(7).[28]  The Supreme Court held in *Kelly v. Robinson*, 479 U.S.

---

[24] "Fine" as used in § 1328(a)(3), which excepts from a chapter 13 discharge "any debt for . . . restitution, or a criminal fine," was also construed by this Court in *Ryan,*07.3 I.B.C.R. at 57, 2007 WL 2215387, at *5.

[25] While Trustee argues the default interest and late charges constitute a "penalty," he has never argued they constitute or can reasonably be viewed as a "fine" or a "forfeiture."

[26] *See also* 6 Collier on Bankruptcy, ¶ 724.02[2] at 724-6 ("In determining whether a claim is within the ambit of section 726(a)(4), the focus will be on whether the claim represents compensation to the holder for actual pecuniary loss.").

[27] It is a "'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" *In re Wind N' Wave*, No. 05-56254, 2007 WL 4226146, at *4 (9th Cir. Dec. 3, 2007) (citation omitted).

[28] Section 523(a)(7) "does not discharge an individual debtor from any debt . . . to the extent such debt is for a *fine, penalty, or forfeiture* payable to and for the benefit of a governmental unit, and is *not compensation for actual pecuniary loss*." 11 U.S.C. 523(a)(7)

(continued...)

MEMORANDUM OF DECISION - 13

36, 51 (1986) that "[§ 523(a)(7)] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures."[29]  This suggests that the almost identical nomenclature used in § 726(a)(4) should also be restricted to penal obligations.

Similarly, § 726(a)(4) compliments the language of § 507(a)(8)(G), which gives an eighth distributive priority to a claim for a tax "penalty."  *See* § 507(8)(G).  Thus, whereas the *noncompensatory* portion of the tax penalty claim is subordinate in distribution under § 726(a)(4), any *compensatory* portion of such claim receives priority status in order of distribution under § 507(a)(8)(G) and § 726(a)(1).[30]  In sum, the punitive or compensatory nature of a claim is relevant when interpreting "penalty" in the broader context of the Code.

Based on the plain language of the statute, the common definition of "penalty," and the context in which this term is used in § 726(a)(4) and in other Code provisions, the Court concludes that a "penalty" under § 726(a)(4) includes only punitive, noncompensatory obligations intended to punish the debtor for his

---

[28](...continued)
(emphasis added).

[29]  *Id.* (holding that restitution paid as a condition of probation was nondischargeable under § 523(a)(7)).

[30]  *Id.*; *see also* 6 Collier on Bankruptcy, ¶ 726.02[4] at 726-11; 4 Collier on Bankruptcy, ¶ 507.10[8] at 507-80 ("Whether a [tax] penalty claim is for actual pecuniary loss is doubly significant because of the operation of section 726(a)(4).").

MEMORANDUM OF DECISION - 14

wrongdoing.[31]

### 3.     Application to Ajax's claim to default interest and late charges

In the present case, Ajax provided an affidavit of Kurt Gustavel, President and Chief Operating Officer of the Bank.[32]  Mr. Gustavel stated: "[T]he interest rate upon default and the late charges were not intended to penalize Pheasant Cove in the event of non-payment; rather they were intended to compensate the Bank for the internal cost of administering and for the significantly higher risk nature of loans in default."[33]  Gustavel further stated that administering loans that are not paid according to their terms "typically requires a substantial amount of effort, time and expense on the part of the Bank," and that the Bank did not make loans with the expectation that they would be paid late or other than as agreed though, if they did, the interest rate "would be significantly higher than 21.000%."[34]  He also noted that the internal costs of administering defaulted loans is reflected in the

---

[31]  Though sensitive to the idea that legislative history need not be consulted absent an ambiguity or absurd result, the Court's construction is consistent with such history.  *See, e.g.*, S. Rep. No. 989, 95th Cong., 2d Sess. 96-979 (1978) ("Paragraph (4) provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case."); 124 Cong. Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini) ("[A] tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4).").

[32]  *See* Adv. Doc. No. 9, Attach. 1 ("Gustavel Affidavit").

[33]  Gustavel Affidavit at 5.

[34]  *Id.*

MEMORANDUM OF DECISION - 15

default rate, and the Bank has no other provision for recovery of those costs.[35]
Finally, Mr. Gustavel claimed that, in regard to Debtor, the efforts required of the
Bank executives, officers and employees between the time of default and the filing
of bankruptcy were substantial.[36]

In an attempt to respond to Ajax's Motion and to support his own cross-
motion, Trustee relies upon an affidavit of his counsel.[37]  Attached to that affidavit
are copies of certain discovery responses made by Ajax.[38]  The point, according to
Trustee, is that these responses show that Ajax is unable to specify the amount
("provide detailed itemization" according to the language used in the discovery
requests) of the internal costs incurred which the default interest and/or late
charges compensate.

The Court appreciates Trustee's argument.  Were it clear that the default
interest and late charges were indeed "penalties" under § 726(a)(4), evidence
would be needed as to the "actual pecuniary loss" compensated thereby.  But
Trustee's approach, which presupposes that the creditor with a claim assailed
under § 726(a)(4) has an obligation to establish the precise compensatory

---

[35]  *Id*. at 6.

[36]  *Id*. at 6-7.

[37]  *See* Adv. Doc. No. 20 ("Manwaring Affidavit").  Trustee filed no other materials in response to Ajax's Motion or in support of Trustee's Motion.  *See* Fed. R. Civ. P. 56(c), (e).

[38]  Manwaring Affidavit at Ex. 1.

MEMORANDUM OF DECISION - 16

magnitude of its claim, ignores the burden on the Trustee to show, in the first

instance, that the claim represents a "fine, penalty or forfeiture."  Trustee has

failed to provide, in support of his cross motion for summary judgment or in

opposition to Ajax's Motion, any fact in support of his contention that the default

interest or late charges at issue were intended or designed to punish rather than to

compensate.

Here, the submissions of the parties show (a) that default interest and late

charges were intended to be compensatory rather than penal or punitive and (b)

that Ajax – an assignee of the Bank's claim – at this time has incomplete

information from the Bank to establish the detailed amount of "actual pecuniary

loss."  Trustee's focus on the second aspect is understandable, but none of the

Trustee's submissions in opposition to Ajax's motion raise an issue of fact as to

the first aspect – the nature of the claim.  Trustee provided no evidence to establish

that default interest and late charges were designed or intended by the Bank to

punish Debtor for non-payment nor does he create a genuine issue of fact on that

point.

Trustee does argue that because the default interest and late charges

aggregate to approximately $300,000.00, they are per se unreasonable and,

therefore, constitute a penalty.[39]  Reasonableness is undeniably in the eye of the

_____

[39]  Trustee also characterizes this amount as a "windfall," but without presenting any
(continued...)

MEMORANDUM OF DECISION - 17

beholder; the Gustavel Affidavit indicates the Bank's view that such amounts are not just compensatory but reasonable on a multi-million dollar obligation.  Even if the Court were to embrace the contention that reasonableness can drive a determination of whether a putatively compensatory charge is in fact a "penalty" within § 726(a)(4), Trustee offers no more than his opinion that the amount is patently unreasonable.[40]

In conclusion, Trustee has failed to present materials under Rule 56 to support his contention that default interest and late charges are penalties within the ambit of § 726(a)(4).  Similarly, Trustee has failed to present rebutting materials under the Rule contradicting Ajax's submissions that assert a compensatory function to the default interest and late charges.[41]

For the foregoing reasons, Ajax's Motion is well taken.  Summary judgment will be granted for Ajax dismissing Trustee's cause of action under

---

[39](...continued)
factual matters adequate to support that pejorative characterization.

[40]  In actuality, Trustee does not even do this.  There is no affidavit of the Trustee in which he testifies as to the reasonableness or unreasonableness of the amount of the late charges and default interest.  There is no affidavit of a disinterested banker or other witness providing this opinion.  Even the Manwaring Affidavit – which was the *only* Rule 56 submission made by Trustee – makes no such assertion.  The asserted unreasonableness is nothing more than argument in the Trustee's brief.

[41]  In addition to arguments regarding Ajax's failure to establish *with specificity* the loss related to the defaults, Trustee argued that because Ajax is an assignee creditor, not the original lender, *it* could not have directly suffered any pecuniary loss at all.  This argument overlooks the basic nature of assignments.  For example, in *New Falls Corp. v. Boyajian (In re Boyajian)*, 367 B.R. 138, 145 (9th Cir. BAP 2007), the BAP recently recognized the rights of an assignee creditor to bring a dischargeability action under § 523(a)(2)(B).  This case demonstrates that the assignee steps into the shoes of the assignor creditor.

MEMORANDUM OF DECISION - 18

§ 726(a)(4) and § 724(a).  Trustee's Motion will be denied.

### C.    Ajax's Motion as to § 506(b)

Ajax's Motion not only contested Trustee's right to relief under § 724(a) and § 726(a)(4), it also requested judgment on its counterclaim.  The counterclaim requests judgment be entered for all interest accrued in excess of the non-default rate, and for all late charges, and for reasonable attorneys fees and costs under § 506(b).[42]  Ajax asserts in the counterclaim that the amount of its claim "will increase daily until paid, with the accrual of interest, late fees and other charges" payable pursuant to the Notes and other loan documents between Debtor and the Bank.[43]  Thus, it is conceivable that the earlier described default interest in the amount of $164,827.23 as of June 11, 2007, and late charges in the amount of $127,302.04 as of April 4, 2007, are not the only amounts claimed.  The record presented, however, does not clarify what amounts are claimed.

A similar problem relates to Ajax's claim to attorneys' fees under § 506(b).  This Court in *In re Lopez*, 349 B.R. 671, 679 (Bankr. D. Idaho 2006), identified four requisites for fees under this section: (1) the creditor's claim is an allowed

---

[42]  Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recover under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.

[43]  *See* Adv. Doc. No. 8 at 3.

MEMORANDUM OF DECISION - 19

secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4)

the fees are provided for under the agreement.  Ajax offered no evidence as to the

amount of the attorneys' fees, costs or charges that it seeks.  There is no affidavit,

itemization of fees and costs, or any other evidence for the Court to evaluate the

amounts claimed recoverable or their reasonableness.

    The Court cannot, on the present record, determine the amount of Ajax's

§ 506(b) claim and cannot enter judgment on the counterclaim.  This aspect of

Ajax's Motion will therefore be denied.

## IV.    CONCLUSION

    For the reasons set forth, Ajax's Motion for Summary Judgment will be

granted in part, as Ajax has demonstrated the absence of genuine issue of material

fact and a right to judgment under applicable law on Trustee's § 724(a) and

§ 726(a)(4) causes of action.  However, Ajax's Motion seeking summary

judgment on its counterclaim will be denied.  Trustee's Motion will be denied.

    Counsel for Ajax shall prepare an appropriate form of order.

DATED:  January 18, 2008

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20